UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **GLOBAL SALES GROUP, CORP.**<br><br>*Plaintiff,*<br><br>vs.<br><br>**SENCI POWER USA, INC. D/B/A A-IPOWER CORP.**<br><br>*Defendants.* | CASE NO.:<br><br>BREACH OF CONTRACT; VIOLATION OF THE PUERTO RICO DEALER'S ACT, Act No. 75 of June 24, 1964, as amended, 10 P.R. Laws Ann. § 278 *et seq.*;<br><br>DEMAND FOR TRIAL BY JURY |

## COMPLAINT

**COMES NOW, Global Sales Group, Corp.**, through its undersigned counsel, and very respectfully STATES, ALLEGES and PRAYS:

### THE PARTIES

1. **Global Sales Group, Corp.** (hereinafter "GSG") is a corporation duly organized under the laws of the Commonwealth of Puerto Rico, with its principal place of business in International Trade Center, Free Trade Center Avenue, Del Comercio Building #1, Local 1, in Guaynabo, Puerto Rico.  GSG's President is Mr. Tulio Figueroa.

2. **Senci Power USA, Inc. d/b/a A-iPower Corp** (hereinafter "A-iPower") is a corporation organized under the laws of the State of California, or a jurisdiction other than Puerto Rico, with its principal place in 108887 Commerce Way, Unit A, in Fontana, California.  A-iPower's Chief Executive Officer is Mr. Dorrance J. Noonan, Jr.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (a)(2) since the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of costs and interests.

4. The venue is proper under 28 U.S.C. §1391(a) and (b) since Plaintiff is a resident of this district, the events giving rise to the claim occurred in this district, and a substantial part of property that is the subject of the action is situated in this district.

## FACTS APPLICABLE TO THE CLAIMS FOR RELIEF

*A.  The relationship between the parties.*

5. GSG is a Puerto Rico distributor and seller of various types of miscellaneous products, servicing primarily clients in the retail industry.

6. A-iPower is a manufacturer and seller of a range of electrical equipment, including electrical generators, power inverters and pressure washers, which are sold under the "A-iPower" brand name.

7. During the year 2014, A-iPower, acting through its Executive Vice President of Sales and Business Development, Mr. Thomas Polito, approached GSG to explore the possibility of having GSG distribute A-iPower's products in Puerto Rico and the U.S. Virgin Islands.

9. In 2014, A-iPower's sales in Puerto Rico and the U.S. Virgin Islands were limited to sporadic direct-to-consumer online sales, without any presence in mayor retail outlets.

10. On November 2014, GSG, represented by Mr. Tulio Figueroa, and A-iPower, represented by its Executive Vice President, Mr. Thomas Polito, reached an agreement for the appointment of GSG and A-iPower's exclusive distributor for Puerto Rico and the U.S. Virgin Islands.

11. In January of 2015, GSG began promoting the sale of A-iPower's products in its sales territory, as well as in other online platforms. GSG invested significant resources in introducing A-iPower to its most important retail clients, principal amongst them "The Home Depot" chain of retail stores.

12. GSG was also instrumental in having The Home Depot accept A-iPower as a vendor in The Home Depot's online sales platform, www.homedepot.com (hereinafter "THD.com"). See, **Exhibit 1**.

13. In connection with the THD.com platform, GSG was responsible for the administration, management, maintenance, and control of A-iPower's THD.com account, which entailed the uploading of product images, specifications, and other relevant information to the online sales platform.

14. A-iPower agreed to pay GSG a 5% commission on all sales made through the THD.com platform. See, **Exhibit 2**.

15. On November of 2016, A-iPower began shipping product to Puerto Rico for sale and distribution by GSG. In the ordinary course of business, A-iPower's product shipped to Puerto Rico was received by GSG, warehoused at GSG's cost, and sold by GSG to Puerto Rico and U.S. Virgin Island customers. Prior to GSG's sales and distribution

efforts, A-iPower's products did not have a retail presence in Puerto Rico, and the brand was virtually unknown to Puerto Rico consumers.

16.   In the ordinary course of business, and beginning on or about February 2017, GSG paid for orders of A-iPower's products net 150 days upon receipt of goods.   GSG also prepaid the 11.5% import tax applicable to these shipments.

### B. Unpaid commissions for direct sales made in GSG's exclusive sales territory.

17.   On October 25, 2017, GSG advised A-iPower that the Puerto Rico retailer "Power Sports Warehouse" was selling A-iPower generators which were acquired by said retailer outside the exclusive distribution channel created by GSG.   A-iPower admitted to selling product directly to "Power Sports Warehouse."   GSG objected to these direct sales by A-iPower, and reiterated to A-iPower that it was its exclusive distributor for the Puerto Rico and U.S. Virgin Island markets.   See, **Exhibit 3**.

18.   On July 23, 2019, A-iPower confirmed that it has also made direct sales to Sam's Club in Puerto Rico.   The sales of A-iPower products to Sam's Club in Puerto Rico were done outside the exclusive distribution channel created by GSG.   See, **Exhibit 4**.   GSG similarly objected to these direct sales by A-iPower, and once again reiterated to A-iPower that it was its exclusive distributor for the Puerto Rico and U.S. Virgin Island markets.

19.   After many months of discussions between the parties, during the month of May 2020, A-iPower, by way of Ms. Irma Paz, Vice President of Sales, agreed to pay GSG commissions for any past direct sales made by A-iPower in GSG's exclusive sales territory, while reiterating GSG's role as A-iPower's exclusive distributor for Puerto Rico.

*Complaint*
Page 5

20.     In this regard, on May 18, 2020, A-iPower, also by way of its Vice President of Sales, Ms. Irma Paz, sent a written communication to the retailer "Power Sports Warehouse" introducing GSG as its "exclusive Distributor and Representative… located in Puerto Rico which will be your main contact moving forward." . See, **Exhibit 5.**

21.     On June 1, 2020, A-iPower, once again by way of its Vice President of Sales, Ms. Irma Paz, sent a written communication to GSG apologizing for A-iPower's failure to notify GSG of the direct sales made to the retailer "Power Sports Warehouse" and acknowledging that GSG was due commissions for these sales. See, **Exhibit 6.**  By information and belief, "Power Sports Warehouse" bought a total of $2,540,944.04 in products directly from A-iPower.

22.     A-iPower never paid GSG the commissions owed for the direct sales made to the retailer "Power Sports Warehouse."

23.     Beginning in July 2020, A-iPower began insisting that GSG execute a written distribution agreement with A-iPower.  The written agreement proposed by A-iPower impaired or otherwise diminished GSG's established exclusive distribution rights.  Because of this, and notwithstanding A-iPower's repeated requests, GSG did not agree to execute any such written agreement, and insisted on continuing the commercial relationship with A-iPower under the same terms and conditions created by the parties' conduct in the ordinary course of business.

24.     After GSG's refusal to execute the written agreement proposed by A-iPower (an agreement which impaired or otherwise diminished its established exclusive distribution rights), A-iPower began to see Puerto Rico retailers selling A-iPower's products acquired

outside the exclusive distribution channel created by GSG. GSG raised this concern with A-iPower, who has denied making any additional direct sales in Puerto Rico.

25. GSG has obtained evidence that A-iPower had, in fact, made direct sales to Puerto Rico retailers, like "Any Parts, Inc." See, **Exhibit 7**. By information and belief, A-iPower has made over $3,000,000.00 in direct sales to "Any Parts, Inc.," circumventing GSG's exclusive distribution channel for Puerto Rico.

25. On repeated occasions, GSG has formally requested from A-iPower an accurate accounting of all direct sales made by A-iPower in GSG's exclusive sales territory, so that the corresponding commissions for these sales can be calculated and paid by A-iPower. To date, A-iPower has refused to produce this information, and has yet to pay any commissions to GSG for its direct sales in GSG's exclusive sales territory.

### C. Impairment of GSG's established distribution rights.

26. After GSG declined to execute the written distribution agreement offered by A-iPower in July of 2020, A-iPower began to unilaterally change the payment terms for orders of A-iPower's products, aimed at making it increasingly more difficult for GSG to obtain inventory.

26. On July 14, 2020, A-iPower announced that it would require from GSG a 30% downpayment in order to process future orders, with the remaining 70% due at the time of shipment. See, **Exhibit 8**. In other words, A-iPower required GSG to pay 100% of the order before it was shipped. This was a dramatic variation from the way GSG traditionally paid for product, which was net 150 days from the date of receipt of goods. GSG objected to this

change in shipment terms, but nevertheless continued to discharge its duties as distributor, paying in advance as required by A-iPower.

27.     On February 5, 2021, A-iPower announced another unilateral change in payment terms, this time a 50% downpayment to process orders, with the remaining 50% due at the time of shipment.  See, **Exhibit 9**.  Once again GSG objected to this additional change in shipment terms, but continued to perform its duties as distributor, paying in advance as required by A-iPower.

28.     The unilateral changes made by A-iPower to GSG's payment terms have made it more difficult for GSG to acquire product and has forced GSG to increase its own prices for its customers.

29.     On June 7, 2022, GSG received a notification from THD.com indicating that GSG's access to the online sales platform had been overwritten.  See, **Exhibit 10**.

30.     A-iPower had overwritten GSG's access to the THD.com online sales platform to take direct control over this online sales channel, to exclusion of GSG.

31.     At present, and notwithstanding GSG's repeated objections, A-iPower continues to deny GSG access to the THD.com platform.  At present, GSG has no control or oversight over the sales made through THD.com.  Similarly, GSG has no sales information of these sales to accurately calculate commissions owed to it for sales made through the platform.

32.     By taking over the THD.com sales channel, and in so doing reaping the benefits of GSG's efforts in establishing A-Power as a vendor in this platform, A-iPower has

unlawfully appropriated itself of the goodwill created by GSG, without compensation to GSG.

33. Prior to the filing of the instant *Complaint*, GSG formally requested from A-Power the payment of all due commissions and the normalization of the commercial relationship between the parties. A-Power has flatly refused to address GSG's demands, thus making the commencement of the present legal action necessary to protect GSG's rights.

## COUNT I
## BREACH OF CONTRACT
## AS TO PAYMENT OF COMMISSIONS

34. Plaintiff restates, as if literally transcribed herein, the averments contained in paragraphs 1-33.

35. As affirmatively alleged herein, as part of the terms and conditions of the exclusive distribution relationship between GSG and A-iPower, there was a standard commission of 5% to be paid for all direct sales made by A-iPower with GSG's exclusive sales territory.

36. Although A-iPower has conceded making millions of dollars in direct sales within GSG exclusive sale territory, it has refused to produce a true and accurate accounting of said sales or to pay GSG the stipulated 5% commission over these sales.

37. A-iPower is in breach of the terms and conditions of the exclusive distribution relationship with GSG by failing to account for, and pay, the corresponding commissions to GSG.

38. At present, GSG possesses evidence of approximately $6,000,000.00 in direct sales in Puerto Rico by A-iPower, which would translate to an estimated $300,000.00 in

unpaid commissions to GSG, an amount which is due and owing. Once A-iPower is made to produce a true and accurate accounting of all direct sales made within GSG's exclusive sales territory --something A-iPower has consistently refused to do--, GSG will be able to determine additional unpaid commissions owed to it, an amount estimated to be no less than an additional $300,000.00.

## COUNT II
### UNLAWFUL IMPARIMENT OF GSG'S EXCLUSIVE DISTRIBUTION RIGHTS IN VIOLATION OF THE PUERTO RICO DEALERS ACT

39. Plaintiff restates, as if literally transcribed herein, the averments contained in paragraphs 1-38.

40. GSG exclusive relationship with A-iPower is protected under Puerto Rico Act No. 75 of June 24, 1964, as amended, commonly known as the Puerto Rico Dealer's Act ("Law 75"), 10 P.R. Laws Ann. § 278, *et seq.*

41. Under Law 75, A-iPower, as principal or grantor, may not directly or indirectly perform any act detrimental to the established relationship with the distributor, GSG, except for "just cause."

42. Under Law 75, A-iPower, as principal, is compelled to respect and honor GSG's exclusive distributorship rights to sell A-iPower's products in Puerto Rico.

43. There is no "just cause" for the impairment of the commercial relationship existing between GSG and A-iPower, and no legally tenable reason has ever been cited by A-iPower.

44. A-iPower's unilateral changes in payment terms have caused undue hardship to GSG's operations, making it ever more difficult and expensive to acquire inventory and increasing the resale cost of these products to GSG's customers.

45. On the other hand, A-iPower's decision to terminate GSG sales efforts through the THD.com sales platform --a sales platform which A-iPower would not have had access too but for GSG's efforts-- further impair and diminish GSG's exclusive distribution rights. A-iPower is reaping the benefits of the goodwill created by GSG's efforts, without compensating GSG.

46. GSG's unlawful impairment of the established and protected relationship with GSG has caused damages estimated at this time to exceed $5,000,000.00, which A-iPower shall indemnify to GSG as provided for under Section 3 of Law 75, 10 P.R. Laws Ann. § 278(b), and which GSG hereby demands.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff GSG hereby prays that the Court enter judgment in its favor and, in doing so, grant for the following relief:

1. That judgment be entered against Defendant A-iPower in an amount of no less than $300,000.00 for unpaid commissions due and owing to GSG, plus whatever additional commissions may be due to GSG once a true and accurate accounting of all direct sales is produced by A-iPower, an amount estimated in an additional $300,000.00 in unpaid commissions.

*Complaint*
Page 11

2. That judgment be entered against Defendant in an amount of no less than $5,000,000.00 for the damages suffered by GSG for the impairment of its exclusive distribution rights;

3. That an award be entered against Defendant for the payment of Plaintiff's costs and attorneys' fees actually incurred in the prosecution of the instant claim;

4. Trial by jury; and,

5. Whatever other relief the Court deems just and proper.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico this 2nd day of May 2023.

> **EDGE Legal, LLC**
> 252 Ponce de León Ave.
> Citibank Tower, Suite 1200
> San Juan, Puerto Rico 00918
> Tel. (787) 522-2000
> Fax (787)522-2010
>
> *S/Eyck O. Lugo*
> EYCK O. LUGO, ESQ.
> USDN 216708
> E-mail: elugo@edgelegal.com