UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| GLOBAL SALES GROUP, CORP.<br><br>Plaintiff<br><br>v.<br><br>SENCI POWER USA, INC. D/B/A A-IPOWER, CORP.<br><br>Defendants | CIVIL ACTION NO.  23-cv-01213(SCC)<br><br>BREACH OF CONTRACT; VIOLATION OF THE PUERTO RICO DEALER'S ACT, Act No. 75 of June 24, 1964, as amended, 10 P.R. Laws Ann. § 278 et seq.; DEMAND FOR TRIAL BY JURY |

## <u>AIP'S ANSWER TO COMPLAINT</u>

**TO THE HONORABLE COURT**:

**COMES NOW,** Defendant Senci Power USA, Inc. d/b/a A-iPower, Corp. ("AIP"), through its undersigned counsel, responds to the Complaint of Plaintiff Global Sales Group, Corp. ("GSG") and respectfully STATES, ALLEGES and PRAYS as follows:

## I.    THE PARTIES

1. The allegations in paragraph 1 are admitted subject to verification.

2. The allegations in paragraph 2 are admitted.

## II.    JURISDICTION AND VENUE

3. The allegations in paragraph 3 are admitted.

4. The allegations in paragraph 4 are admitted.

## III.    FACTS APPLICABLE TO THE CLAIMS FOR RELIEF

### A. *The relationship between the parties.*

5.    The allegations in paragraph 5 do not require a responsive pleading from AIP. If a responsive pleading were required, Paragraph 5 is admitted in part and denied in part.  It is admitted that GSG sells products in the retail industry. However, the description of GSG as a distributor with regards to AIP is denied. GSG was not a distributor of AIP's products for Puerto Rico or the U.S. Virgin Islands ("USVI") within the definition of Act 75.[1] In the alternative, GSG was not a distributor of AIP's products throughout their entire business relationship. Moreover, in the alternative, GSG was never an exclusive distributor of AIP's products. Period. Also, GSG only sold a limited list of AIP's products in Puerto Rico at The Home Depot. GSG did not develop a market for AIP's products.

6.    The allegations in paragraph 6 are admitted.

7.    The allegations in paragraph 7 are admitted in part and denied in part. It is admitted that around the year 2014 AIP and GSG started negotiations to develop a business relationship involving the sale of its products in Puerto Rico. Thomas Polito, AIP's Executive Vice President of Sales at the time, started negotiations on behalf of AIP and Tulio Figueroa on behalf of GSG. The rest of the Paragraph is denied as written. AIP affirmatively alleges that the focus of the negotiations between the parties was The Home Depot and its stores in Puerto Rico. GSG was not a distributor of AIP's products for Puerto Rico or the USVI within the definition of Act 75. In the alternative, GSG was not a distributor of AIP's products throughout their entire business relationship. Moreover, in the alternative, GSG was never an exclusive distributor of AIP's products. Period. Also, GSG only sold a limited list of AIP's products in Puerto Rico at The Home Depot. GSG did not develop a market for AIP's products.

---

[1] 10 L.P.R.A. § 278 ("Act 75").

9.   (sic).[2] The allegations in paragraph 9 are denied as drafted.  It is affirmatively alleged that AIP is a manufacturer of power generators and other electrical equipment. AIP has sold its products through direct sales and online platforms to major retail stores in the mainland U.S. and its territories independently of any efforts by GSG.

10.  The allegations in paragraph 10 are denied. AIP affirmatively alleges that it never reached an agreement with GSG to name it as its exclusive distributor for the territory of Puerto Rico or the USVI. The business relationship between GSG and AIP was informal and flexible. At the insistence of GSG no written contract could be executed clarifying the relationship between the parties. Independently of how the parties may have characterized their relationship, the day-to-day business relationship between AIP and GSG, was modified until its termination by GSG. Furthermore, it is affirmatively alleged that as to the Home Depot E Commerce Platform, GSG and AIP did not have a commercial relationship as defined or per the terms of Act 75 – since it involved sales outside of Puerto Rico and throughout the continental U.S. As to the Home Depot Stores, GSG originally and for years obtained products from AIP and worked on a consignment basis. GSG was ultimately paid by the Home Depot when it sold the products it obtained from AIP on a consignment basis.  Moreover, it is also affirmatively alleged that during the business relationship and since GSG was not a distributor, AIP sold its products directly in Puerto Rico through other stores with the full knowledge and acceptance of GSG, and was tolerated by GSG.

11.  The allegations in paragraph 11 are denied as drafted. AIP affirmatively alleges that through GSG and AIP's efforts, AIP was included as a vendor on the online platform of the Home

---

[2] Please note that there is no paragraph 8 in the Complaint – GSG skipped from paragraph 7 to 9. This answer follows the same numeration.

Depot for sales of products within the continental United States; and by and through GSG, some of AIP's products (power generators only) were sold at the Home Depot stores in Puerto Rico. The allegation or insinuation that GSG promoted AIP's products in Puerto Rico outside The Home Depot stores is specifically denied. GSG made no real, significant, worthwhile, or productive efforts to introduce AIP's products to other stores or retailers in Puerto Rico. In short, GSG failed to develop the market of Puerto Rico for AIP's products and only sold to The Home Depot's stores in Puerto Rico. AIP further alleges that regarding the online platform for The Home Depot.com – although for sales only throughout the mainland U.S. (not Puerto Rico or the USVI) and therefore outside the scope of Act 75 - GSG failed to develop online sales as required. Thus, for The Home Depot.com GSG at some point merely performed clerical duties, and later performed no tasks while demanding payment of a commission on the sales performed through the efforts and resources spent by AIP.

12. The allegations in paragraph 12 are denied as drafted. Nonetheless, it is affirmatively alleged that through the concerted efforts of GSG and AIP, AIP's products were included in The Home Depot's online sales platform, www.home depot.com, for sale throughout the continental United States, and for which GSG received a 5% commission for all the sales therein made. It is affirmatively averred that this understanding and relationship by and between AIP and GSG related to the continental U.S. online sales through The Home Depot.com did not engender any obligations under Act 75.

13. The allegations in paragraph 13 are denied as drafted.  AIP affirmatively alleges that regarding the sales on the online platform for The Home Depot.com, GSG's duties were to assist in promoting AIP's products and growing its sales volume. Nevertheless, for a time GSG merely

performed clerical duties that failed to promote and increase the sales volume. After some time, GSG was content in receiving a 5% commission for doing no work or spending no resources at The Home Depot.com. It is affirmatively averred that this understanding and relationship between AIP and GSG did not engender any obligations under Act 75 as all sales through The home Depot.com platform were made to customers within the continental United States.

14. The allegations in paragraph 14 are denied as written. AIP originally agreed to pay a 5% commission for AIP's products sold on The Home Depot.com, but GSG was expected to actively work and promote the sales in the platform - GSG failed to do so. It is affirmatively averred that this understanding and relationship between AIP and GSG did not engender any obligations under Act 75 as all sales through The Home Depot.com platform were made to customers within the continental United States.

15. The allegations in paragraph 15 are denied as drafted.  It is affirmatively alleged that AIP started shipping products to GSG by the end of 2016 **on a consignment basis** and only for retail sale at the Home Depot stores in Puerto Rico. That is, GSG pushed the weight of the risks of the sale on AIP. GSG merely received the products, warehoused them, and paid AIP **after** the products were sold through the Home Depot stores in Puerto Rico. Other than The Home Depot Stores, GSG did not actively promote, effectively sell, or create a market for AIP products in any store or point of sale in Puerto Rico or the USVI.

16. The allegations in Paragraph 16 are admitted in part and denied in part. It is admitted that regarding the sales that GSG made to the Home Depot stores in Puerto Rico, it did pay the applicable taxes once the products were shipped to Puerto Rico. However, it is denied that GSG paid for orders of AIP products "net 150 days upon receipt of goods". It is affirmatively alleged that from the

beginning of the business relationship up to the year 2020 the payment terms agreed upon between GSG and AIP for the direct sales made to the Home Depot stores were on a **consignment basis**. GSG paid AIP for every unit sold **after** it made the sale regardless of when the products were received or transferred. Thus, GSG shifted the weight of the risk onto AIP. However, the payment terms changed during the relationship. From the year 2020 up to the date the business relationship was terminated (by GSG), GSG agreed to pay AIP within 90 days after the products were received for domestic goods (from Fontana, California) and regarding shipments from China a 30% downpayment and 70% once the products were shipped.

### B.  Unpaid commissions for direct sales made in GSG's exclusive sales territory.

17.  The allegations in Paragraph 17 are admitted in part and denied in part. On October 25, 2017, GSG sent an electronic message to AIP informing it that Power Sports was selling AIP generators in its stores. AIP was indeed selling generators directly to Power Sports – as was its right and privilege. It is denied that GSG was the exclusive distributor of AIP products in Puerto Rico. AIP affirmatively alleges that after it received the electronic message from GSG on October 17, 2017, it sent an electronic message in response. Therein, AIP expressly told GSG in no uncertain terms that GSG was not the exclusive distributor of AIP products in Puerto Rico or the USVI. GSG did not contest or otherwise challenge the fact that it was not an exclusive distributor at that time and did not do so until many years later.

18.  The allegations in Paragraph 18 are admitted in part and denied in part. It is admitted that AIP sells its products directly to the Sam's Club stores in the United States and through their online platform. Moreover, it is affirmatively alleged that on 2019, AIP approached GSG to explore the possibility of making sales to Sam's Club Puerto Rico under a different arrangement than the one

they already had related to The Home Depot stores in Puerto Rico. However, the parties never reached an agreement and AIP continued its business relationship with Sam's Club. It is denied that GSG was the exclusive distributor of AIP products in Puerto Rico.

19.  The allegations of Paragraph 19 are denied as drafted. It is affirmatively alleged that GSG was not the exclusive distributor of AIP products in Puerto Rico. It is algo alleged that the relationship between AIP and GSG was informal and flexible in nature and was modified by the parties' actions.  Moreover, between GSG and AIP there was no agreement regarding the sale of products to Power Sports. GSG knew that AIP was selling its products directly to Power Sports since at least 2017. Thereafter, during the month of May 2020, the parties discussed the possibility of making sales to Power Sports. In June 2020, AIP agreed that it would pay commissions to GSG for any direct sales it made to Power Sports. However, from the moment the agreement was reached until the present, no direct sales of AIP products were ever made to Power Sports.  Furthermore, per information and belief, GSG never made any sales to Power Sports – thus squandering another opportunity available to GSG to sell AIP products in Puerto Rico through an outlet other than The Home Depot. The representation made by Irma Paz was done mistakenly since the direct sale made to Power Sports on January 8, 2019 preceded the agreement reached between the parties. Also, no commissions for sales accrued after 2020 since – through information and belief - GSG failed to make any sales to Power Sports.

20.  The allegations in paragraph 20 are admitted in part and denied in part. It is admitted that on May 18, 2020, Irma Paz sent an email communication to Power Sports informing the latter that GSG was its exclusive distributor and main contact moving forward.  The rest of the paragraph is denied as drafted.  It is affirmatively alleged that the representation made by AIP in May 2020 was

account specific and was only related to direct sales GSG was able to make to Power Sports going forward. It is affirmatively alleged that GSG was not an exclusive distributor of AIP products in Puerto Rico. Per information and belief, GSG never made any sales to Power Sports – thus squandering another opportunity made available to GSG to sell AIP products in Puerto Rico through an outlet other than The Home Depot. Also, no commissions for sales accrued after 2020 since – through information and belief - GSG failed to make any sales to Power Sports.

21.  The allegations in paragraph 21 are admitted in part and denied in part. It is admitted that on June 1, 2020, Irma Paz sent an email communication to GSG regarding Power Sports. The rest of the paragraph is denied as drafted. It is affirmatively alleged that GSG was not the exclusive distributor of AIP products in Puerto Rico. It is algo alleged that the relationship between AIP and GS was informal and flexible in nature and was modified by the parties' actions.  Moreover, between GSG and AIP there was no agreement regarding the sale of products to Power Sports. GSG knew that AIP was selling its products directly to Power Sports since at least 2017. Around that time, GSG confirmed the understanding that the relationship between the parties would continue to be flexible and informal – with GSG representing that it would sell AIP's competing products in Puerto Rico. Thereafter, during the month of May 2020, the parties discussed the possibility of making sales to Power Sports. On June 2020, AIP agreed that it would pay commissions to GSG for any direct sales it made to Power Sports going forward. However, from the moment the agreement was reached until present, no direct sales of AIP products were ever made to Power Sports.  Furthermore, per information and belief, GSG never made any sales to Power Sports – thus GSG squandering another opportunity to sell AIP products in Puerto Rico through an outlet other than The Home Depot. The representation made by Irma Paz was done mistakenly since the direct sale made to Power Sports

8

on January 8, 2019, preceded the agreement reached between the parties. This was not and would not be how the parties conducted themselves. Also, no commissions for sales accrued after 2020 since – through information and belief – GSG failed to make any sales to Power Sports.

22. The allegations in paragraph 22 are admitted as to AIP not having paid GSG a commission on any sales AIP made to Power Sports, but it is denied that any amounts were owed to GSG. It is affirmatively alleged that GSG was not entitled to receive the payment of commissions for the direct sales AIP made to Power Sports since GSG was not AIP's exclusive distributor.

23. The allegations in paragraph 23 are denied as drafted. It is affirmatively alleged that GSG was not the exclusive distributor of AIP products in Puerto Rico. It is also alleged that AIP never executed a written formal agreement that defined the relationship between the parties at GSG's insistence that it was not needed. The relationship between AIP and GSG was informal in nature and was modified from time to time. However, in 2020 AIP requested that GSG sign a formal distribution agreement, but GSG failed and refused to do so. The proposed distribution agreement defined the relationship that existed between the parties at the time and did not "impair" or "diminish" any right previously acquired by GSG.

24. The allegations in paragraph 24 are denied. It is affirmatively alleged that GSG was not the exclusive distributor of AIP in Puerto Rico or the USVI. It is also alleged that GSG knew that AIP was selling its products directly to stores in Puerto Rico since at least 2017. It is also alleged that since GSG was never the exclusive distributor of AIP's products in Puerto Rico, there was no impediment for AIP to sell its products in Puerto Rico through other stores or distributors.

25.  The allegations in paragraph 25 are denied.  It is affirmatively alleged that GSG was not a distributor and/or the exclusive distributor of AIP products in Puerto Rico, therefore AIP could sell its products in Puerto Rico through other stores or points of sale.

25.  (sic)[3]  The allegations of this paragraph 25 are denied as drafted. It is affirmatively alleged that GSG is not the exclusive distributor of AIP's products in Puerto Rico or the USVI, and GSG never had an exclusive sales territory granted to it by AIP, as alleged. Therefore, GSG is not entitled to any information regarding the direct sales made by AIP. Said information is confidential in nature, constitutes proprietary business information, and was not required to be produced to GSG.

### C.  Impairment of GSG's established distribution rights.

26.  The allegations in paragraph 26 are denied.  It is affirmatively alleged that the relationship between AIP and GSG was informal in nature and was modified during its course.  It is also alleged that around June 2020, the payment terms were negotiated between the parties and modified, with GSG agreeing to and procuring products from AIP under the changed terms for more than 2 years. The latter changes occurred since GSG owed AIP millions of dollars for generators it had received and retained in its inventory in consignment for years and for which GSG had failed to sell and/or pay AIP – thus placing the majority of the risk of the transactions on AIP. Also, the required changes were made per AIP's parent company's business re-organization. As per the new terms agreed to by GSG and under which GSG operated on or after June 2020, GSG would pay AIP in 90 days after it received the generators for domestic goods shipped from the U.S. (Fontana, California), and

---

[3] The Complaint has two paragraphs 25 as reflected in AIP's responsive pleading.

regarding shipments from China a 30% down payment was required and the remaining 70% once the products were shipped.

26. (sic).[4] The allegations in paragraph 26 are denied as drafted. It is affirmatively alleged that the relationship between AIP and GSG was informal and flexible in nature and was modified during its course. It is also alleged that around June 2020, the payment terms were negotiated between the parties and modified, with GSG agreeing to and procuring products from AIP under the changed terms for more than 2 years. The latter changes occurred, in part, since GSG owed AIP millions of dollars for generators it had received and retained in its inventory under consignment for years and for which GSG had failed to sell and/or pay AIP – thus placing the majority of the risk of the transactions on AIP. Also, the required changes were made per AIP's parent company's business re-organization. As per the new terms, GSG had to pay AIP in 90 days after it received the generators for domestic goods shipped from the U.S., and regarding shipments from China a 30% downpayment was required and the remaining 70% once the products were shipped. It is also alleged, that in addition to Exhibit 8, there are numerous communications between the parties regarding this subject – for its complete understanding.

27. The allegations in paragraph 27 are denied as drafted. It is affirmatively alleged that the relationship between AIP and GSG was informal in nature and was modified – it was not that of a distributor per Act 75. It is also alleged that around June 2020, the payment terms were negotiated between the parties and modified, with GSG agreeing and procuring products from AIP under the changed terms for more than 2 years. This occurred, in part, since GSG owed AIP millions of dollars

---

[4] The Complaint has two paragraphs 26 as reflected in AIP's responsive pleading.

for generators it had received and retained in its inventory for consignment for years and for which GSG had failed to sell and/or pay AIP – thus placing the majority of the risk of the transactions on AIP. Also, the required changes were made per AIP's parent company's business re-organization. Per the new terms, GSG would pay AIP in 90 days after it received the generators domestically or shipped from the U.S. (Fontana, California), and for shipments from China a 30% down payment was required and the remaining 70% once the products were shipped. In or about February 2021, the down payment increase requirement was discussed by the parties for shipments being made directly from China. It is also alleged that in addition to Exhibit 9, there are numerous communications between the parties regarding this subject. Finally, the change in terms were justified under the circumstances, there were valid and reasonable business reasons for the change and the changes agreed to voluntarily by the parties did not impair their existing relationship – which was specific to The Home Depot stores in Puerto Rico.

28.  The allegations in paragraph 28 are denied. It is affirmatively alleged that around June 2020, the payment terms were negotiated between the parties and modified, which GSG agreed to.  The payment terms were changed, in part, since for two years GSG had failed to sell and pay millions of dollars to AIP for power generators it had received and retained on consignment. Moreover, the change in terms were justified under the circumstances, there were valid and reasonable business reasons for the change and the changes agreed to voluntarily by the parties did not impair their existing relationship.

29.  The allegations in paragraph 29 are denied as drafted. It is affirmatively alleged that since 2019, GSG was notified by AIP that the online platform for The Home Depot was going to be converted to an in house-account and handled by a specialist in the E-commerce business. It is also

alleged, that in addition to Exhibit 10, there are numerous communications between the parties regarding this subject – for its complete understanding.

30. The allegations in paragraph 30 are denied. It is affirmatively alleged that AIP always had control over the Home Depot.com online platform. All the sales strategies, orders received, shipments, customer service, returns and promotional discount offers were handled and funded by AIP. AIP further alleges that regarding the online platform for The Home Depot.com – although for sales throughout the mainland U.S. (not Puerto Rico or the USVI) and therefore outside the scope of Act 75 - GSG failed to develop online sales as required. Thus, for The Home Depot.com GSG at some point merely performed clerical duties, and later performed no tasks while demanding payment of a commission on the sales performed through the efforts and resources spent by AIP.

31. The allegations in paragraph 31 are denied. It is affirmatively alleged that AIP always had control over the Home Depot.com online platform. All the sales strategies, orders received, shipments, customer service, returns and promotional discount offers were handled and funded by AIP. AIP further alleges that regarding the online platform for The Home Depot.com – although for sales throughout the mainland U.S. (not Puerto Rico or the USVI) and therefore outside the scope of Act 75 - GSG failed to develop online sales as required. Thus, for The Home Depot.com GSG at some point merely performed clerical duties, and later performed no tasks while demanding payment of a commission on the sales performed through the efforts and resources spent by AIP. Nevertheless, AIP paid commissions on the Online sales of The Home Depot.com until GSG terminated the relationship.

32. The allegations in paragraph 32 are denied. It is affirmatively alleged that AIP always had control over the Home Depot online Platform. All the sales strategies, orders received, shipments, customer service, returns and promotional discount offers were handled and funded by AIP. AIP further alleges that regarding the online platform for The Home Depot.com – although for sales throughout the mainland U.S. (not Puerto Rico or the USVI) and therefore outside the scope of Act 75 - GSG failed to develop online sales as required. Thus, for The Home Depot.com GSG at some point merely performed clerical duties, and later performed no tasks while demanding payment of a commission on the sales performed through the efforts and resources spent by AIP. Nevertheless, AIP paid commissions on the online sales of The Home Depot.com until GSG terminated the relationship. AIP further denies that GSG established any separate and/or independent business goodwill, apart from that created by and for AIP, with regard to AIP product sales on The Home Depot.com, including because GSG's role was solely clerical in nature, with GSG later having no role at all.

33. The allegations in paragraph 33 are denied.  It is affirmatively alleged AIP tried to meet with GSG to address their demands and continue the business relationship. However, GSG failed and/or refused to meet and ultimately terminated the relationship. It is also alleged that AIP does not owe any commissions to GSG.

**IV.    COUNT I - BREACH OF CONTRACT AS TO PAYMENT OF COMMISSIONS**

34. The allegations in paragraph 34 do not require a responsive pleading from AIP.  However, if a responsive pleading is required it is denied, with AIP also setting forth and incorporating its responses to paragraphs 1 through 33, above, as though set out in full herein.

35.  The allegations in paragraph 35 are denied as drafted. It is affirmatively alleged that GSG is not the exclusive distributor of AIP's products in Puerto Rico. It is also alleged that the business relationship between AIP and GSG was account specific and only related to the Home Depot stores within Puerto Rico, with GSG never having an exclusive distribution right to a specific territory, and with AIP never agreeing to pay and never paying a percentage commission to GSG on GSG's sales made to the Home Depot stores in Puerto Rico. Instead, AIP is informed and believes, and based thereon alleges that GSG negotiated a price for the goods it sold to Home Depot stores in Puerto Rico for the products GSG acquired from AIP and other manufacturers, that all such sales were made under GSG's separate Vendor Buyers Account with the Home Depot, and any amounts GSG made from those sales was a function of the prices it negotiated with Home Depot stores in Puerto Rico. The only commission paid by AIP to GSG was a 5% commission paid on the sales made in the continental U.S. through the Home Depot.com online platform, with AIP continuing to do so even though GSG failed to expand the business as required and while GSG relegated itself to a role that was strictly clerical in nature. AIP continued to pay even after GSG no longer had any role and did so up and until GSG ended its relationship with AIP.

36.  The allegations in paragraph 36 are denied. It is affirmatively alleged that GSG is not the distributor and/or the exclusive distributor of AIP's products for the territory of Puerto Rico and was not paid commissions for sales of AIP's products in The Home Depot. The sales terms of AIP's products to GSG evolved through time as agreed by the parties according to their convenience and business interests. Therefore, GSG is not entitled to any information regarding the direct sales made by AIP to customers or accounts it developed. Any information of AIP's sales is confidential in

nature, constitutes proprietary business information, and GSG had no right to claim or receive the same.

37. The allegations in paragraph 37 are denied.  It is affirmatively alleged that GSG is not the distributor and/or the exclusive distributor of AIP's products for the territory of Puerto Rico. It is also alleged that AIP never paid any commissions to GSG for sales made in the Home Depot Stores and does not owe any commissions to GSG. Moreover, AIP did not agree to provide its proprietary business information to GSG.

38. The allegations in paragraph 38 are denied.  It is affirmatively alleged that GSG was not the distributor and/or exclusive distributor of AIP's Products in Puerto Rico or the USVI, therefore it is not entitled to any information regarding the direct sales made by AIP. Said information is confidential in nature, constitutes proprietary business information, and GSG had no right to claim or receive the same. It is also alleged that AIP never paid and never agreed to pay GSG a commission on all sales made in Puerto Rico, and does not owe commissions to GSG. Moreover, AIP did not agree to provide its proprietary business information to GSG.

## V.     COUNT II – UNLAWFUL IMPAIRMENT OF GSG'S EXCLUSIVE DISTRIBUTION RIGHTS IN VIOLATION OF THE PUERTO RICO DEALERS ACT

39. The allegations in paragraph 39 do not require a responsive pleading from AIP.  However, if a responsive pleading is required it is denied, with AIP also setting forth and incorporating its responses to paragraphs 1 through 38, above, as though set out in full herein.

40. The allegations set forth in Paragraph 40 present legal conclusions and/or arguments; thus, no answer is required. In the alternative, they are denied. It is affirmatively alleged that GSG was not the distributor and/or exclusive distributor of AIP's Products in Puerto Rico.

41.  The allegations set forth in Paragraph 41 present legal conclusions and/or arguments; thus, no answer is required. In the alternative, they are denied. It is affirmatively alleged that GSG was not the distributor and/or exclusive distributor of AIP's products in Puerto Rico or performed acts to impair their informal and evolving business relationship.

42.  The allegations set forth in Paragraph 42 present legal conclusions and/or arguments; thus, no answer is required. In the alternative, they are denied. It is affirmatively alleged that GSG was not the distributor and/or exclusive distributor of AIP's products in Puerto Rico. Conversely, GSG sold products competing with AIPs at relevant times during the complaint.

43.  The allegations set forth in Paragraph 43 present legal conclusions and/or arguments; thus, no answer is required. In the alternative, they are denied. It is affirmatively alleged that GSG was not the distributor and/or exclusive distributor of AIP's products in Puerto Rico. It is also alleged that it was GSG – not AIP -, who terminated the business relationship. AIP further alleges that AIP is currently not selling any products to or through Home Depot stores within Puerto Rico or otherwise capitalizing or impairing the relationship by and between GSG and Home Depot stores within Puerto Rico, and AIP is informed, believes and thereon alleges that GSG continues to sell products to and through Home Depot stores within Puerto Rico, including GSG's sale of other competing manufacturers' products that GSG has been selling through the Home Depot from before, during and after its relationship with AIP.

44.  The allegations set forth in Paragraph 44 present legal conclusions and/or arguments; thus, no answer is required. In the alternative, they are denied. It is affirmatively alleged that the relationship between AIP and GSG was informal in nature and was voluntarily modified by both parties during its course as the circumstances and interests of all concerned required. It is also alleged

that around June 2020, the payment terms were negotiated between the parties and modified by agreement, with GSG operating under the modified terms for over two years. The change occurred, in part, since GSG owed AIP millions of dollars for generators it had received and retained in its inventory under consignment for years and for which GSG had failed to sell and/or pay AIP. Also, the change occurred due to the restructuring of AIP's parent's business in China. Among the payment terms offered to GSG were several alternatives.

45.  The allegations set forth in Paragraph 45 present legal conclusions and/or arguments; thus, no answer is required. In the alternative, they are denied. It is affirmatively alleged AIP always had control over the Home Depot.com online Platform. All the sales strategies, orders received, shipments, customer service, returns and promotional discount offers were handled and funded by AIP. AIP affirmatively alleges that regarding the sales on the online platform for The Home Depot.com, GSG's duties were to assist in promoting AIP's products and growing its sales volume. Nevertheless, for a time GSG merely performed clerical duties that failed to promote and increase the sales volume. After some time, GSG was content in receiving a 5% commission for doing no work or spending no resources at The Home Depot.com. AIP further alleges that all sales through the Home Depot.com online platform were for orders and sales to customers in the continental United States and not to customers within Puerto Rico, and therefore AIP denies that the relationship and/or such sales fall under Act 75.

46.  The allegations set forth in Paragraph 46 present legal conclusions and/or arguments. Thus, no answer is required. In the alternative, they are denied in their entirety.

18

## VI.   AFFIRMATIVE DEFENSES

AIP asserts the following affirmative defenses and reserves the right to amend this Answer to assert any additional defenses when, and if, during its investigation, discovery, preparation for trial or otherwise, it becomes appropriate to assert such defenses. AIP does not assume the burden of proof of any defense that would otherwise rest on Plaintiff.

1.   AIP reiterates and restates at length herein, its answers to the preceding paragraphs with the same force as if set forth here.

2.   The *Complaint* fails to meet the plausibility standard established by the U.S. Supreme Court in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S.662 (2009). Because GSG has failed to present a well-pleaded Complaint stating a claim underwhich relief may be granted, GSG claims must be dismissed.

3.   Act No. 75 does not apply to the business relationship between AIP and GSG.

4.   The allegations regarding any sales allegedly made on the USVI market do not constitute a breach under the terms of Act 75, and should be dismissed.

5.   AIP never agreed to appoint GSG – nor did the parties conduct themselves as - an exclusive or sole distributor for its products to any or all customers in the Puerto Rico and USVI market. The relationship between AIP and GSG for sales within Puerto Rico was customer specific and only related to the Home Depot stores in Puerto Rico.  As The Home Depot.com was concerned with sales outside of Puerto Rico – thus, the terms of Act 75 do not apply.

6.   There is no written or verbal agreement between AIP and GSG with all the terms and conditions for the sale and distribution of AIP products in Puerto Rico as is required by Act 75.

7.   The business relationship between AIP and GSG did not have a fixed term or duration.

8.   AIP sold its products to GSG on a consignment basis for the resale to the Home Depot Stores in Puerto thus shifting the burden of the risk on AIP – thus denying any distributor relationship between AIP and GSG.

9.   GSG does not qualify for protection as a dealer or distributor contemplated under Act 75.

10.  The alleged exclusive "agreement" lacks the obligations which are indispensable to exclusive distribution contracts; namely, the buyer's acceptance of purchase quotas, minimum purchase requirements or sales goals as the *quid pro quo* for the seller to grant territorial exclusivity in distribution, *Casas Office Machines, Inc. v. Mita Copystar of America, Inc.*, 42 F.3d 668 (1st Cir. 1994), or to deal exclusively with the supplier's brand, *R W Intl. v. Welch Food, Inc.*, 13 F.3d 478, 484 (1st Cir. 1993) (just cause for termination of an Act 75 business partnership includes the dealer's conflict of interest by promoting a competing brand of product), or the buyer assuming extensive promotion and sales responsibilities. *See Roberco Inc. v. Oxford Inds., Inc.*, 122 D.P.R. 115, 123 (1988).

11.  GSG did not assume or accept any obligations that are the *quid pro quo* for exclusive distribution agreements.

12.  GSG was not bound by an exclusive agreement and sold products that competed with AIP products.

13.  Any change in the terms of the business relationship between AIP and GSG were agreed to by the parties in good faith, and any such changed terms by AIP were reasonable under the circumstances. Thus, they did not constitute an impairment to their business relationship.

14. GSG freely terminated the business relationship with AIP for its own reasons and convenience.

15. GSG and AIP did not agree on any quotas or sales performance standards or set the term or duration of any agreement.

16. There was no consideration to AIP in exchange for the alleged exclusive distribution of its products.

17. AIP never made a firm and definite offer to GSG with all the required elements of a distribution relationship per Act 75, and never appointed GSG as an exclusive distributor.

18. All of GSG's claims are barred by the doctrines of estoppel and/or laches.

19. GSG is estopped from bringing this action by its own conduct or by law.

20. GSG has abused its right to invoke these claims.

21. At all times AIP has acted in good faith.

22. At all times alleged in the Complaint, any alleged failure to perform on AIP's part was excused by GSG's breaches, repudiations, material omissions, misrepresentations, and failure and refusal to render counter-performance.

23. All or some of GSG's claims are barred in whole or in part, including by GSG's knowledge of, acquiescence to, ratification, and/or waiver of each and every act alleged in the Complaint.

24. GSG's claims are barred, either in whole or in part, by GSG's own unclean and wrongful conduct.

25. GSG's claims are barred, in whole or in part, by the doctrines of release and consent, including by GSG's own acts, omissions, and the acts and omissions of others chargeable to it,

by which GSG has caused, consented, and/or contributed to the damages, if any, which GSG claims to have suffered.

26. GSG's claims are barred, in whole or in part, by the failure of consideration.

27. All or some of GSG's claims are barred by the appropriate statute of limitations.

28. GSG is not entitled to the remedies requested.

29. GSG failed to prove the existence and amount of actual compensatory damages and/or the allegations of damages are self-inflicted, speculative, exaggerated, duplicative or contrary to law.

30. The alleged damages suffered by GSG if any, were partially or totally caused by and/or due to its own acts or omissions.

31. GSG has failed to mitigate its damages, if any.

32. AIP reserves the right to amend this *Answer* and raise any additional affirmative defenses, counterclaims, or crossclaims it may deem necessary as further investigation and circumstances may warrant.

**WHEREFORE,** AIP respectfully requests that this Honorable Court:

a. **Dismiss** the Complaint in its entirety, with a Judgment of Dismissal being entered in AIP's favor and against GSG as to each cause of action alleged therein;

b. That AIP be awarded its costs of suit, including its attorneys' fees; and

c. For such other and further relief as this Honorable Court deems just and proper.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, on this 7th day of July 2023.

       **I HEREBY CERTIFY:** I electronically filed the foregoing with the Clerk of the Court

using the CM/ECF system, which will send notification of such filing to the parties of record.

                 /s/ *Jairo Mellado-Villarreal*
                 USDC No. 208112
                 jmellado@mellado.com

                 /s/ *Tessie Leal - Garabis*
                 USDC No. 218408
                 tleal@mellado.com

                 MELLADO & MELLADO-VILLARREAL
                 165 Ponce de León Ave., Suite 102
                 San Juan, Puerto Rico 00917-1233
                 Tel. 787-767-2600/Fax 787-767-2645